UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| DUSTIN DERNIER, | ) |
| Movant, | ) ) ) |
| vs. | ) Case No. 16-223 |
| SEAN L. GILBERT, et al., | ) ) ) |
| Respondents. | ) ) ) |

**DUSTIN DERNIER'S MOTION TO QUASH SUBPOENA DUCES TECUM OR FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT THEREOF**

Non-party Dustin Dernier ("Dernier"), pursuant to Rules 26(c)(1) and 45(d)(3)(A)(iv) of the Federal Rules of Civil Procedure, and in support of his motion to quash or for a protective order, states as follows:

**I.  Statement of the Matter Before the Court**

For the second time in the past fifteen months, this Court is being asked to resolve a discovery dispute arising out of litigation pending in the U.S. District Court for the Northern District of California (the "California Court"). *See Sean Gilbert, et al. v. MoneyMutual, LLC, et al.*, Case No. 13-cv-01171-JSW ("Gilbert Lawsuit"). The Plaintiffs in the Gilbert Lawsuit have filed a four-count class action complaint against a group of defendants involved in the consumer loan industry.[1] The primary defendants in the Gilbert Lawsuit are Selling Source, LLC and its subsidiary MoneyMutual LLC ("Defendants"). The allegations are that Defendants violated federal and state law through their promotion of a network of lenders, which Plaintiffs contend were operating illegally.

---

[1] Plaintiffs' Fifth Amended Complaint is attached as Exhibit 1.

In July of 2015, in response to a Motion to Compel filed by Plaintiffs, non-party Rare Moon Media ("RMM") sought and was granted a protective order from this Court which substantially narrowed the scope of a Rule 45 subpoena duces tecum served on RMM. *See* Memorandum and Order dated January 12, 2016 (the "RMM Order"), entered in *Sean L. Gilbert v. Rare Moon Media, LLC,* Case No. 15-mc-217-CM, a copy of which is attached as Exhibit 2. In the RMM Order, the Honorable Carlos Murguia ruled that RMM would not be required to produce documents as to 4 of 10 document requests included in Plaintiffs' subpoena. *Id.* The Court also struck, in their entirety, 7 of 19 deposition topics in the subpoena, and narrowed the remaining twelve topics. *Id.*

Like the previous discovery dispute involving RMM, the present dispute involves a subpoena duces tecum (the "Subpoena") issued to a non-party (Dustin Dernier), by the same Plaintiffs represented by the same counsel (Jeffrey Wilens), and like the earlier subpoena, the Subpoena at issue here is overly broad and imposes an undue burden on a non-party, seeks discovery as to matters that are irrelevant to the litigation, and has been issued for improper purposes.[2] For the reasons set forth herein, Dernier requests that Plaintiffs' Subpoena be quashed in its entirety (and Dernier relieved from any obligation to appear for a deposition). Alternatively, Dernier seeks a protective order (similar to the RMM Order) which limits the scope of any deposition Plaintiffs may take of Dernier.[3]

---

[2] Copies of the Subpoena and Dernier's responses to the Subpoena have been attached hereto as Exhibits 3 and 4.

[3] Dernier reserves the right to raise additional arguments regarding Plaintiffs' document requests should Plaintiffs file a motion to compel with respect to same. The present motion centers on Plaintiffs' effort to depose Dernier.

**II.     Question Presented**

Should the Court enter an order quashing or modifying Plaintiffs' Subpoena or enter a protective order which narrows the scope of any deposition Plaintiffs' counsel might conduct of Dernier?

**III.    Arguments and Authorities**

**A.     Standard for Motion for Protective Order**

Pursuant to Rule 45(d)(3)(A)(iv), "the court for the district court where compliance is required must quash or modify a subpoena that…subjects a person to undue burden."[4] Moreover, pursuant to Rule 26(c)(1), a court may, for good cause, issue an order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."

A court has broad discretion to decide when a protective order is appropriate and what degree of protection is required. *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 244 (D. Kan. 2010). As explained by the Supreme Court, the "trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

**B.     Plaintiffs' Subpoena is Intended to Harass, Annoy and Oppress Dernier, and Imposes an Undue Burden by Requiring Him to Appear for a Deposition Despite the Fact He Does Not Possess the Documents or Information Plaintiffs are Seeking.**

Although Plaintiffs' Subpoena seeks Dernier's deposition, Plaintiffs' counsel has made no secret of the fact that his motivation for issuing the Subpoena is to acquire documents responsive to three of the nineteen categories of documents requested in the Subpoena (and the

---

[4] Plaintiffs' Subpoena seeks to take Dernier's deposition in Overland Park, Kansas, making this "the court for the district court where compliance is required." *See* Exhibit 3.

3

information to be derived therefrom).  *See* email from Jeff Wilens to Paul Croker dated August 12, 2016, attached as Exhibit 5 (stating, "All I am looking for is the loan templates and the loan 'raw numbers.'")  Specifically, Plaintiffs' counsel seeks the following three categories of documents (collectively the "Loan Documents"):

- Documents showing which loans were made by lenders during the class period to California residents and which were obtained through leads provided by Selling Source. (Subpoena, request 17);

- Documents showing how much money was paid to Lenders or their agents by the borrower for each loan referenced in item #17. (Subpoena, request 18); and

- Exemplars of each version of the loan agreements used to make the loans referenced in item #17. (Subpoena, request 18).

*See* Exhibit 3.

Dernier, however, does not possess or have access to the Loan Documents or to the "raw numbers" relating to the loans at issue, a fact that undersigned counsel has repeatedly conveyed to Plaintiffs' counsel and which Dernier himself has now affirmed through affidavit.  *See* Email from Paul Croker to Jeff Wilens dated August 23, 2016, attached as Exhibit 6; Declaration of Dustin Dernier, ¶¶ 5-6, attached as Exhibit 7.  While at one time Dernier was employed as a Manager of Efinance Support, a company that was ***not*** a party to the Gilbert Lawsuit, Dernier is no longer employed by the company and, accordingly, has no access to its records (or to the records of any subject lenders).  *See id*., ¶¶ 3-6.

Despite the fact that Dernier does not possess the documents Plaintiffs are seeking, Plaintiffs' counsel has insisted on taking Dernier's deposition unless he (or his counsel) "find[s] another way to get me the information I requested."  *See* Email from Jeff Wilens to Paul Croker attached as Exhibit 8.  Essentially, Plaintiffs' counsel is now using the threat of taking Dernier's deposition—and the inherent inconvenience and costs of depositions—as leverage to force Dernier to acquire documents from entities over whom Dernier has no control and is not

employed. Plaintiffs' use of the subpoena power for this purpose is therefore clearly designed to annoy, harass and oppress Dernier—an individual who is neither a party nor connected to the Gilbert Lawsuit and who counsel knows does not have the documents or information he is seeking—and wholly justifies this Court's entry of an order quashing the Subpoena in its entirety.

### C. Plaintiffs' Subpoena Suggests Plaintiffs' Counsel Will Depose Dernier as to Matters that are Not Relevant to the Gilbert Lawsuit.

That Plaintiffs' counsel seeks to take Dernier's deposition – despite the fact that Dernier does not have the documents or information counsel is seeking to acquire – also strongly suggests counsel intends to use the deposition as a proverbial "fishing expedition" aimed at acquiring information that is not relevant to the Gilbert Lawsuit. Notably, other than the three requests seeking the Loan Documents, all of the document requests in the Subpoena seek documents regarding Dernier's "business relationship" with a host of different entities and individuals, *none of whom are parties to the Gilbert Lawsuit*. *See* Exhibit 3. The requests also seek documents relating to Dernier's "ownership interest in, employment by, income from…and contacts with" these entities/individuals. *Id.* Moreover, the requests seek documents for an eight-year time period that extends beyond the class period defined by the California Court.[5]

Plaintiffs' counsel has not (and cannot) articulate why documents relating to these "business relationships" (if any) are pertinent to Plaintiffs' claims, nor has counsel offered an explanation for why he requires Dernier's personal and confidential income and employment information. That Plaintiffs' counsel seeks these documents raises concerns that his questioning of Dernier may delve into topics that are equally irrelevant. Such concerns are justified.

---

[5] *See Sean Gilbert, et al. v. MoneyMutual, LLC, et al.*, Case No. 13-cv-01171-JSW, Order granting, in part, and denying, in part, Motion for Class Certification, Doc. 257, p. 3.

5

Indeed, Plaintiffs' counsel has shown no reluctance to explore ancillary issues during depositions – ***even in instances in which this Court has issued an order denying the very discovery that Counsel has sought to conduct***.  As noted previously in the RMM Order, the Court struck or limited ***all*** of the deposition topics included in Plaintiffs' Subpoena to RMM.  As result of the Court's ruling, Plaintiffs' Counsel was not permitted to question RMM's corporate representative about, *inter alia*:

- the identity of the owners, directors, officers or employees of non-party lenders;
- any complaints made by members of the public or government agencies concerning whether lenders were operating legally;
- the identity of all banks and account numbers used by RMM and the lenders to pay money.

*See* Exhibit 2, RMM Order, p. 22-23.

Nevertheless, despite the Court's order, Plaintiffs' counsel repeatedly questioned RMM's corporate representative regarding these issues.  *See* Deposition of Jeremy Shaffer, excerpts of which are attached hereto as Exhibit 9 (p. 236, l. 13 (inquiry about officers of non-party lender Encompass Consulting Group); p. 260, l. 1 (inquiry about employees and officers of non-party lender VIP PDL Services); p. 308, l. 5 (inquiry about government actions relating to non-party lenders).

It should also be noted that counsel for the Plaintiffs in the Gilbert Lawsuit (Jeffrey Wilens and Jeffrey Spencer) have filed approximately 140 arbitration cases on behalf of other claimants against non-party Dernier and approximately 15 other respondents. Exhibit 7, Affidavit of Dustin Dernier, ¶ 7. The scope of the document requests certainly indicate that Plaintiffs' intentions are to ask questions of Dernier related to individuals and entities that are parties to the arbitration cases and that will not be related to the Gilbert Lawsuit. For instance, the document requests do not mention any of the parties to the Gilbert Lawsuit, but rather, focus

on the respondents in the arbitration cases. Plaintiffs' counsel, Mr. Wilens, has stated that he is only interested in obtaining the documents responsive to requests 17, 18 and 19 (which Mr. Dernier does not control, possess or have access), because it appears that Plaintiffs seek these documents for purposes of identifying and notifying the members of the class certified in the Gilbert Lawsuit. However, even though Dernier has stated that he does not possess or have access to these documents, Plaintiffs' counsel continues to press forward with the deposition of Dernier to harass him in an apparent attempt to coerce him into producing documents he does not have.

Given Plaintiffs' counsel's history of engaging in irrelevant and harassing discovery of non-parties—even in direct violation of this Court's Order—Dernier has little doubt that absent a court order confining the scope of his deposition Plaintiffs' counsel will delve even further into topics that have no relevance to the Gilbert Lawsuit, including but not limited to topics struck or narrowed in the RMM Order.

Accordingly, although Dernier believes Plaintiffs' Subpoena should be quashed in its entirety, to the extent the Court is inclined to allow the deposition to proceed in any respect, Dernier requests that the scope of the deposition be narrowly tailored to only permit questions related to document requests 17, 18 and 19 or, at a minimum, topics that are clearly relevant to Plaintiffs' claims in the Gilbert Lawsuit.

## **CONCLUSION**

Wherefore, for the foregoing reasons, Dustin Dernier seeks an Order of the Court quashing Plaintiffs' Subpoena in its entirety.  In the alternative, Dernier requests an order of the Court entering a protective order which limits the scope of Dernier's deposition to questions pertaining directly to the Gilbert Lawsuit.

**L.R. 37.2 CERTIFICATION OF CONFERENCE**

Counsel for Dustin Dernier, Paul Croker, hereby certifies that he has conferred with counsel for Respondents, Jeff Wilens, on multiple occasions, including through telephone calls and emails. Despite these communications, the parties have been unable to reach an agreement regarding Respondents' subpoena to Dustin Dernier.

ARMSTRONG TEASDALE LLP

By: */s/ Paul Croker*
Paul Croker                              #21627
David A. Jermann                    #19686
2345 Grand Boulevard, Suite 1500
Kansas City, Missouri 64108-2617
816.221.3420
816.221.0786 (facsimile)
pcroker@armstrongteasdale.com
djermann@armstrongteasdale.com

ATTORNEYS FOR MOVANT
DUSTIN DERNIER