## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **DUSTIN DERNIER,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 16-mc-223-JAR-GEB** |
| | ) | |
| **SEAN L. GILBERT, et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |
| | ) | |

## <u>MEMORANDUM AND ORDER</u>

This matter is before the court on Petitioner's Motion to Quash Subpoena Duces Tecum or for Protective Order (**ECF No. 1**).  On January 3, 2017, the Court convened an in-person hearing to address the pending Motion.  Petitioner Dustin Dernier appeared through counsel, Paul M. Croker.  Respondents did not appear, despite the Court's attempts to reach counsel.  After review of their response (ECF No. 14, sealed) to the resulting Show Cause Order (ECF No. 13), the Court finds Respondents have shown good cause for failure to appear, and decides the Motion to Quash on the parties' written briefs.  For the reasons outlined below, the motion (ECF No. 1) is **GRANTED IN PART and DENIED IN PART**.

# I.     Background

## A.     Underlying Class Action

Respondents[1] in this subpoena dispute are the plaintiffs in a class action pending in the U.S. District Court for the Northern District of California, titled *Gilbert v. MoneyMutual, LLC* ("*Gilbert* Lawsuit").[2]  The California plaintiffs allege the defendants in that case violated a California deferred deposit transaction law by making or assisting in the origination of payday loans without being licensed, as well as committing various RICO[3] violations and engaging in unfair competition.[4]  The California plaintiffs claim to have been solicited through website or email to obtain payday loans from illegal lenders. The California court certified the case as a class action, defining the class as those California residents who received a "payday loan" from either an unlicensed or specified lender on or after February 11, 2009.

## B.     The *Gilbert* Complaint

The *Gilbert* Complaint describes the transitory nature of the unlicensed lenders and/or their promoters, claiming they "frequently change the names of their 'companies'" particularly when the "'heat' becomes too intense," and then continue lending operations

---

[1]  Although the electronic docket lists other California plaintiffs—Keeya Malone, Kimberly Bilbrew, and Charmaine B. Aquino—as Respondents in this action, Respondent Gilbert is the sole Respondent who has entered an appearance in this court.

[2]  *See Sean Gilbert, et al. v. MoneyMutual, LLC, et al.*, Case No. 13-cv-01171-JSW (N.D. Cal., filed March 15, 2013).

[3]  Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962.

[4]  *Gilbert*, No. 13-cv-01171-JSW (N.D. Cal.); *see Gilbert* Compl., produced in the instant action as ECF No. 1, Ex.1.

under a new name.[5] Tracking ownership of the companies appears to be a common problem, due to the companies' routine use of false addresses and incorporation overseas. Additionally, the *Gilbert* plaintiffs claim the lending companies typically use "front men" as their agents, who then market the payday loans to the public and control the bank accounts of the unlicensed lenders.  One such company alleged to have created shell business entities, websites, and other promotions for the unlicensed lenders was Selling Source, named as a defendant in the *Gilbert* action.

### C.      Previous Dispute in this District

An earlier subpoena dispute in the District of Kansas dealt specifically with a subpoena to Rare Moon Media, LLC,[6] a former defendant in the *Gilbert* lawsuit.  In *Gilbert v. Rare Moon Media*, No. 15-mc-217-CM, U.S. District Judge Carlos Murguia described how the "*Gilbert* lawsuit plaintiffs allege that Rare Moon Media, LLC was the middleman between" Selling Source entities and certain unlicensed lenders.[7]  Among other findings, Judge Murguia determined "[a]lthough Rare Moon Media, LLC is no longer a party to the California litigation, Rare Moon Media, LLC's relationship and interactions with current defendants in the *Gilbert* lawsuit and the unlicensed lenders is potentially relevant to the existence of a racketeering scheme and the current defendants' knowledge of it."[8]  The Court allowed the deposition of a Rare Moon representative—

---

[5] *Gilbert* Fifth Amd. Compl., produced here as ECF No. 1, Ex.1, at ¶45.
[6] *Gilbert v. Rare Moon Media, LLC*, No. 15-mc-217-CM, 2016 WL 141635 (D. Kan. Jan. 12, 2016).
[7] *Rare Moon*, 2016 WL 141635, at *5 (italics added).
[8] *Id.* (italics added).

which occurred in March 2016—but narrowed the deposition topics and document requests to those it felt sought appropriately relevant and discoverable information (ECF No. 1, Ex. 9).

### D.    The Current Dispute

As part of the discovery process in the *Gilbert* lawsuit, in early September 2016, Gilbert issued a subpoena duces tecum to non-party Dustin Dernier seeking to depose him and requesting he bring a number of documents to his deposition.  Gilbert contends Dernier is a former employee of one or more of the Rare Moon-affiliated companies. Similar to interactions in the earlier dispute with Rare Moon, the parties attempted to agree upon a declaration by Dernier in lieu of his live testimony, but apparently could not agree on the terms of the declaration.[9]  Because Dernier's deposition is sought to occur in Overland Park, Kansas, he now petitions this Court under Fed. R. Civ. P. 45(d)(3)(A) to either quash the subpoena or issue a protective order limiting the scope of his deposition. In opposition, Gilbert asks the Court to either transfer consideration of the issue back to the Northern District of California, or deny Dernier's motion in its entirety.

## II.    Requests at Issue

The subpoena to Dernier contains a request for production of 19 categories of documents (ECF No. 1, Ex. 3, at 5-8).  It seeks production of documents sufficient to show Dernier's business relationships between January 2008 and March 2016, including his "ownership interests in, employment by, income from…and contacts" with:  Rare

---

[9] *See Rare Moon*, 2016 WL 141635, at *1; *see also* Resp., ECF No. 2, at 3, in the instant action.

Moon Media (No. 1); various individuals (Nos. 2-6); and several payday lending companies (Nos. 7- 16).  Requests No. 17 through 19 seek documents showing which loans were made by the lenders named in Nos. 9-16 through leads provided by Selling Source (No. 17); documents showing how much money was paid for the Selling Source loans (No. 18); and exemplars of each version of the loan agreements used to make the Selling Source loans (No. 19).

## III.   Arguments of the Parties

Dernier's arguments can be distilled to one primary contention:  the subpoena was issued solely for the intent of harassing him, and being subject to the document requests and costs of a deposition imposes an undue burden upon him, because he does not possess the documents or information.  As secondary concerns, he contends Gilbert's requests are overbroad and the deposition is a "fishing expedition" to gain information irrelevant to the *Gilbert* lawsuit.  Regarding relevance, Dernier argues the requests— except the three seeking loan documents (Nos. 17-19)—pursue documents concerning Dernier's business relationships with a host of different entities and individuals, none of whom are parties to the *Gilbert* lawsuit.  He protests Gilbert has not articulated why such documents are pertinent to his claims, nor has he offered an explanation for why he requires Dernier's personal and confidential income and employment information for an eight-year time period that extends beyond the class period defined by the California court.

If this Court were to permit his deposition, Dernier asks the Court to narrow the scope of his examination to permit only questions related to document request Nos. 17 – 19, or, at minimum, topics only clearly relevant to claims in the *Gilbert* lawsuit. However, Dernier warns that the Court's ruling on the earlier deposition subpoena—which narrowed the topics for examination—was disregarded by Gilbert's counsel, and believes the narrowing of this subpoena is likely to be similarly ignored (Mot., ECF No. 1, at 6).

In response, Gilbert contends he (and other California plaintiffs) attempted to obtain the records sought by the subpoena from the lenders themselves, but the lending companies appear to be defunct.  Furthermore, he claims efforts to locate the lending companies or their representatives have been repeatedly frustrated because, thus far, the former Rare Moon employees all deny relationships with the lenders.  The March 2016 deposition of the former Rare Moon CEO, Jeremy Shaffer, identified Dustin Dernier as the manager of the Rare Moon lenders, and depositions of both Shaffer and another former Rare Moon employee, Brad Levine, revealed Denier both met with persons on behalf of lenders and signed agreements on the lenders' behalf.  (Resp., ECF No. 2 at 4-6.)  As a result of discovery thus far, Gilbert believes Dernier was, until recently, closely connected to the lenders, and at minimum, the class plaintiffs should be allowed to examine Dernier on the identities of the persons in charge of the lenders and who possesses the lending records, if Dernier does not.

As a part of his opposition to Dernier's motion, Gilbert seeks to transfer the motion to the Northern District of California so it may be decided by the same court

presiding over the underlying action.  He argues this is the second motion filed in Kansas seeking to enforce or block subpoena compliance in connection with the *Gilbert* lawsuit, and because he has been trying to serve another non-party, also located in Kansas, there may be a third motion (either to quash or compel) filed in this district in the near future. However, if this Court retains the motion, Gilbert contends the subpoena places no undue burden on Dernier and asks the Court to deny the motion to quash in its entirety.

## IV.    Motion to Transfer

Before turning to the merits of the motion, the Court will first address the issue of transfer.  In his Response, Gilbert seeks to transfer Dernier's motion to the Northern District of California.  Fed. R. Civ. P.  45 governs the issuance of subpoenas and the parameters for the Court to consider when deciding a motion to quash or request to transfer a subpoena-related motion. Rule 45(f) permits the court in the district where compliance is required to transfer a subpoena-related motion to the court which issued the subpoena, if either the responding party consents or the court finds exceptional circumstances exist.[10]

Because Dernier does not consent to transfer, this Court may only transfer the motion "in exceptional circumstances," and, as the party seeking transfer, Gilbert "bears the burden of showing that such circumstances are present."[11]  This Court's primary concern is to avoid the burden to the Kansas party subject to the subpoena, and it cannot assume the Northern District of California is in a superior position to decide the motion

---

[10] *See Rare Moon*, 2016 WL 141635, at *2 (discussing a motion to transfer under Rule 45(f)).

[11] Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendments.

to quash.[12]   Additionally, although this Court's secondary goal must be to avoid the disruption of the underlying litigation,[13] the fact that this district has previously retained a related motion, with no reported effect on the underlying case, demonstrates this Court's ruling is highly unlikely to disturb the progress of the California litigation.

The advisory committee note to Rule 45(f) identifies only two conditions which merit the transfer of a subpoena related motion:  1) where the issuing court has "already ruled on issues presented by the motion" and 2) when "the same issues are likely to arise in discovery in many districts."[14]   Here, the parties offer no opinions from the issuing court on the issues presented, and no information which leads this Court to believe the issues will arise in a number of districts, aside from this one.

Gilbert presents no unique circumstances in the motion pending before this Court which sets it apart from the motion previously decided in this district, and this Court finds the same rationale applicable here.[15]   Gilbert demonstrates no exceptional circumstances justifying transfer.  Therefore, Gilbert's request to transfer consideration of this motion is DENIED.

## V.    Motion to Quash

Finding the request to transfer unsupported, the Court turns to the merits of Dernier's motion to quash the nonparty subpoena.  As described above, Dernier objects

---

[12] *Id.*
[13] *Id.*
[14] *Valle Del Sol, Inc. v. JAR Kris W. Kobach*, No. 14–mc–219–JAR, 2014 WL 3818490, *3 (D. Kan. 2014).
[15] *Rare Moon*, 2016 WL 141635, at *2.

to the subpoena primarily on the basis of undue burden, with secondary arguments regarding overbreadth and relevance.

### A.    Applicable Law

#### 1.    Undue Burden

Under Rule 45(d)(3), "the court for the district where compliance is required must quash or modify a subpoena that" meets various criteria, including one which subjects the responding party (or non-party) to undue burden.  When considering a motion to quash, non-parties subject to a Rule 45 subpoena are generally provided heightened protection from discovery abuse.[16] But determining "whether a subpoena imposes an undue burden upon a witness is a case-specific inquiry requiring consideration of 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'"[4] The courts must balance the need for discovery against the burden imposed on the person ordered to produce documents.[17]  The "party asserting undue burden must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request."[18]

---

[16] *XPO Logistics Freight, Inc. v. YRC, Inc.*, No. 16-MC-224-CM-TJJ, 2016 WL 6996275, at *3 (D. Kan. Nov. 30, 2016) (citing *Speed Trac Techs., Inc. v. Estes Exp. Lines, Inc.*, No. 08-212-KHV-JPO, 2008 WL 2309011, at *2 (D. Kan. June 3, 2008)).
[17] *Speed Trac Techs.,* No. 08-212-KHV-JPO, 2008 WL 2309011, at *2.
[18] *Id.*, at *5.

## 2.    Overbreadth and Relevance

Although Rule 45 does not specifically include relevance or overbreadth as bases to quash a subpoena, "this court has long recognized that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and Rule 34."[19]   Rule 26(b)(1) permits discovery of "any non-privileged matter that is relevant to any party's claim or defense."   If the party seeking discovery meets its initial, minimal burden to demonstrate its request is relevant, on its face,[20] the resisting party cannot rely upon a conclusory statement that the requested discovery is irrelevant.[21]    It "must either demonstrate the discovery sought does not come within the broad scope of relevance defined in Rule 26(b)(1), or that it is of such marginal relevance that the potential harm caused by the discovery would outweigh the presumption in favor of broad disclosure."[22]

Additionally, the scope of discovery must be "proportional 'to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'"[23]    "A subpoena that seeks

---

[19] *Martinelli v. Petland, Inc.,* No. 10-mc-407-RDR, 2010 WL 3947526, at *3 (D. Kan. Oct. 7, 2010) (internal citations omitted); *Martin v. Grp. 1 Realty, Inc.*, No. 12-2214-EFM-DJW, 2013 WL 3322318, at *2 (D. Kan. July 1, 2013).

[20]  *Speed Trac Techs.*, No. 08-212-KHV-JPO, 2008 WL 2309011, at *2 (citing *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.,* No. 05–2164-MLB-DWB, 2007 WL 2122437, at *4 (D. Kan. July 20, 2007)

[21] *XPO Logistics Freight*, No. 16-MC-224-CM-TJJ, 2016 WL 6996275, at *4 (citing *Speed Trac Techs.*, No. 08-212-KHV-JPO, 2008 WL 2309011, at *3).

[22] *Id.*

[23] *Rare Moon*, 2016 WL 141635, at *4 (citing Fed. R. Civ. P. 26(b)).

irrelevant, overly broad, or duplicative discovery causes undue burden, and the trial court may quash it on those bases."[24]

### B.     Analysis

To support his undue burden argument, Dernier focuses on his professed lack of both knowledge and documents, and his belief that his deposition will venture into irrelevant territory.  However, aside from these conclusory statements, Dernier fails to articulate his expenses or provide any other demonstration of burden imposed by the mere participation in a deposition.

Although the Court finds Dernier's deposition itself imposes little burden, it must consider whether the subpoena seeks relevant information and whether the requests are overbroad.[25]  Essentially, Gilbert seeks to examine Dernier on his business relationships with Rare Moon (Request No. 1); and the individuals (Nos. 2-5), consulting groups (Nos. 6-8), and lenders (9-16) demonstrated to have relationships with Rare Moon and the Selling Source lenders.  In Request No. 17, Gilbert seeks information on loans obtained through leads provided by Selling Source. Request No. 18 seeks documents demonstrating the amounts paid to the lenders for those loans, and No. 19 requests examples of each version of the loan agreements used to make loans.

---

[24] *Rare Moon,* 2016 WL 141635, at *4 (citing *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB-DWB, 2007 WL 2122437, at *5 (D. Kan. July 20, 2007)).
[25] *See Speed Trac Techs.*, No. 08-212-KHV, 2008 WL 2309011, at *2.

Relevance, at discovery, is broad.[26]   Because Dernier allegedly represented the lenders in facilitating the transactions in question, as borne out through previous discovery, the Court finds the information regarding his relationships with these individuals and entities to be relevant, on its face.  The burden to demonstrate lack of relevance, then, falls back on Dernier, but his conclusory statement that he possesses no relevant information is insufficient to overcome the facial relevance of the requests.

Despite the facial relevance, the Court finds some merit to Dernier's concerns regarding the overbreadth of the documents sought by Request Nos. 1-16.  Gilbert did not address why Requests Nos. 1-16 seek documents for a time frame even more expansive than the class period established by the California court.[27]   Additionally, although confidentiality does not equate to privilege, Gilbert fails to explain why documentary evidence of Dernier's personal income and employment information and *all* communications regarding the relationships indicated in those requests, for such an expansive time frame, should be produced.   The Court finds Requests Nos. 1 through 16 to be neither limited in topic nor time frame.   Despite the overbroad nature of the document requests, however, the Court acknowledges Gilbert's frustrated efforts to discern the working relationships between these parties.  Because document requests 1-16 are facially overbroad, Dernier will not be required to produce documents responsive to those requests—in this respect, his motion is GRANTED.   However, Dernier is required

---

[26] *Id.* at *3.
[27] Generally, Request Nos. 1 through 16 seek documents from January 2008 through March 2016, compared to the class defined in California as residents who received a payday loan "on or after February 11, 2009."

to testify about the nature of the relationships described in the requests, and his motion is therefore DENIED in part. If the deposition is fruitful, Dernier could be subject to a narrower document subpoena if warranted after his deposition.

The time frame found in Request Nos. 17 – 19, however, is more appropriately narrowed to mirror the class period in the *Gilbert* lawsuit. Additionally, the lenders are apparently defunct, and Gilbert is unable to access the loan information directly from the lenders. Because Gilbert provided some evidence (through the Shaffer and Levine deposition testimony) indicating Dernier acted as an agent of the lenders by presenting and even signing lead orders, the Court finds Request Nos. 17-19 both relevant and appropriately narrowed in time frame and scope. Dernier must produce any documents in his possession or control responsive to Request Nos. 17-19, and be examined on the same. In this respect, Dernier's motion is DENIED.

Upon review of the briefing, the distrust brewing on each side of this issue is apparent. Given the alleged transient nature of the lending companies, the avoidance of responsibility thus far by the lenders and their agents, and even the allegations of evasion of service by intended witnesses, the Court acknowledges Gilbert's distrust of Dernier. On the flip side of that coin, however, the Court also understands Dernier's skepticism regarding Gilbert's intentions, particularly in light of Dernier's allegations about the apparent disregard of this District's earlier order regarding the Rare Moon deposition. (*See* Mot., ECF No. 1, at 6.) For these reasons, Dernier's deposition shall occur in the courthouse, under the supervision of this Court.

## VI.    Conclusion

In this instance, Dernier's bare denials simply do not meet his burden to demonstrate he would be so unduly burdened that the subpoena must be quashed in its entirety.  He has not convinced the Court he possesses no relevant information about the lenders and their practices, and is therefore subject to inquiry at deposition.  However, document Request Nos. 1-16 are facially overbroad.  While Gilbert is entitled to question Dernier on the nature of the business relationships referenced in the subpoena, Dernier will not be required to produce more than eight years of personal and financial records and related communications sought by those requests.  But, he must respond to Request Nos. 17-19.

Although Gilbert, in his Response, conceded to use any testimony or documents produced in response to its subpoena in this action only "in the *Gilbert* and *Pham* class actions" and not in any pending arbitration proceedings (Resp., ECF No. 2 at 9)—neither party provided information to the Court regarding the *Pham* class action or other proceedings.  However, the Court accepts Gilbert's concession and orders that any documents or testimony arising from Dernier's deposition should only be used as Gilbert has offered.

**IT IS THEREFORE ORDERED** that Petitioner Dernier's Motion to Quash Subpoena Duces Tecum (**ECF No. 1**) is **GRANTED in part and DENIED in part** as set forth above.  The deposition of Dustin Dernier is permitted on the topics found in the

subpoena; however, he will only be required to produce documents responsive to Request Nos. 17-19.

**IT IS FURTHER ORDERED** that the parties confer and cooperate with one another to agree upon proposed dates for the deposition of Dustin Dernier to occur under the Court's supervision in the United States Courthouse, located at 401 N. Market, Wichita, Kansas. The Court plans to convene the parties for a telephone conference, for the purpose of scheduling the deposition, within seven (7) days of the date of this Order.

**IT IS SO ORDERED**.

Dated this 31st day of January, 2017, at Wichita, Kansas.

s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge